IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Rashida Issa, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Rosalind Franklin University of Medicine ) | |
| and Science, ) | Jury Trial Requested |
| ) | |
| Defendant. ) | |

**Complaint for Injunctive and Monetary Relief**

Plaintiff Rashida Issa ("Plaintiff" or "Rashida") by and through her attorneys, complains of Rosalind Franklin University of Medicine and Science ("Defendant," "RFUMS," or "the University") violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973, and in support of her Complaint states as follows:

**Jurisdiction**

1. This court has federal jurisdiction over this case pursuant to 28 U.S.C. Section 1331, as this case arises under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et. Seq. ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C.S. § 794(a).

2. This Court is vested with venue over Plaintiff's claims pursuant to 28 U.S.C. § 1391(b).

3. Plaintiff and Defendant reside or maintain their principal place of business in the Northern District of Illinois, and the unlawful actions alleged in this Complaint occurred in North Chicago, Illinois.

**Introduction**

4. This action is brought by Rashida, a former pharmacy student at Rosalind Franklin University who was diagnosed with an anxiety disorder, a specific learning disability in

1

reading, depression and Attention Deficit Hyperactivity Disorder ("ADHD") in early 2016. Rashida's diagnoses explained why she had failed two lecture-and-reading intensive courses despite repeating them. Instead of allowing her to remediate classes through the University's remediation-system once it was discovered she would benefit from various accommodations, the University initiated dismissal proceedings only a few weeks after it approved exam-related accommodations she requested pursuant to the Americans with Disabilities Act ("ADA"), effectively rendering its accommodations meaningless.

5. In her final quarter, Rashida repeatedly made accommodation requests to take remediations for two courses she had failed before she knew she had serious learning disabilities that necessitated learning modifications, accommodations, and medication changes. The University routinely offers remediation exams in courses pharmacy students fail.

6. The University rejected Plaintiff's requests despite the fact that allowing her to retake the courses would have been an easy accommodation to provide; the University was already scheduled to administer these same remediations to other students and the University admitted that providing Plaintiff extra time and a separate space was not unreasonably burdensome for the University. In fact, the University failed to process Rashida's request to take the remediations as an accommodation request pursuant to its own policy and procedures, having failed to even provide her with the accommodation request form to submit her request.

7. Rashida seeks injunctive relief reinstating her to her status as a pharmacy student and affording her the opportunity to remediate three courses, including Pharmacotherapy I and II, with accommodations. But for the University's discriminatory treatment and denial of Plaintiff's request to take these two remediations with accommodations, and

2

passing one or both remediations, Plaintiff would have not been subject to dismissal pursuant to the University's handbook, and would have matriculated into her final year of Pharmacy School.

## Parties

8. Rashida attended Rosalind Franklin University's College of Pharmacy starting in 2013. Rashida suffers from several clinically diagnosed disabilities which involve neurological and behavioral impairments including a specific learning disability in reading, ADHD, and anxiety, all of which substantially limit her ability to learn and concentrate, especially under stress.

9. Rosalind Franklin University School of Pharmacy is a postgraduate private school and program that qualifies as a place of public accommodation under the ADA and applicable federal regulations. RFUMS receives federal funding and does business in North Chicago, Illinois.

## Facts

10. In the 2014-2015 academic year, Rashida failed Pharmacotherapy I and Pharmacotherapy II.

11. RFUMS's policy anticipates that pharmacy students may fail courses during their time in pharmacy school. Students who fail courses have a second chance at passing a course by remediating a course, which entails allowing students to re-study and take a cumulative exam for the course to pass the course. Pursuant to the policy, "the opportunity for course remediation is at the discretion of the Course Director."

12. The policy also provides for the possibility of having students retake failed courses, repeating entire academic years of courses, and even remediating courses *after* already repeating an entire academic year (at times, effectively giving students a third chance at

passing their courses). Students at Rosalind Franklin are routinely permitted to remediate two courses per year, sometimes permitted to retake courses twice after failing, and are often given at least three chances to pass a course that they failed.

13. After Rashida failed Pharmacotherapy I and II, Rashida's counselor suspected Rashida might have a learning disability, and referred her to another psychologist for extensive testing. Specifically, Rashida's counselor suspected Rashida might have a learning disability when she noticed how long Rashida would spend studying a given amount of material and how she used to run out of time during exams. Rashida began seeing a general physician who prescribed her some medication in the meantime.

14. In August of 2015, Rashida retook Pharmacotherapy I but failed the course.

15. In November of 2015, Rashida was finally able to afford the extensive psychological evaluation her therapist recommended, for which she did not receive any financial assistance for from the University.

16. In December of 2015, Rashida started to retake Pharmacotherapy II.

17. On or about January 7, 2016, Rashida received written results of her psychological evaluation, which revealed she had a specific reading learning disability, attention-deficit/hyperactivity disorder, dysthymic disorder, and an anxiety disorder.

18. Rashida's reading disability makes it more difficult for her brain to connect ideas and make sense of details, making it difficult for her to distinguish more important details with unimportant details. It also makes it harder to concentrate when reading. Rashida will at times need to read materials more than once to understand them, which affects the speed at which she reads materials. The reading impairment requires that she exert much more effort and time to understand and retain material, as compared with other students.

4

19. Rashida's ADHD makes it more difficult for her to focus on her daily activities, including but not limited her ability to read, listen, drive, and complete certain everyday tasks. Her thoughts are not streamlined and she is very easily distracted. It takes her much longer to get organized and to organize her thoughts. The ADHD also makes it more challenging for her to retain information when listening to a long lecture or reading long materials; making the supplementation of a more interactive component to her learning processes important.

20. Rashida's anxiety affects her ability to complete tasks right away. Her depression also restricts her ability to complete tasks, making it difficult for her to eat, sleep, and pray on a daily basis.

21. Rashida's evaluator included several recommendations for accommodations she could seek from her pharmacy program. Rashida's evaluator also recommended several important learning modifications she would need to incorporate into her study-routine to retain the material she needed to learn to succeed in pharmacy school.

22. While these impairments affected her everyday activities, for which she developed various ways to cope with throughout her life (and without knowing the diagnoses), these disabilities were extremely detrimental to her performance in Pharmacotherapy I and II, both of which involved a great deal of detail that needed to be both understood and memorized. The courses were taught by multiple professors, many of whom were not always on campus and some of whom were guest speakers from hospitals, making it difficult for her to follow up with them. The first time she took these courses, the courses each involved six hours per week of lecture and the second time she took the courses, the curriculum had changed so that they each involved four hours of lecture per week. Other classes were mostly taught by one professor throughout the entire quarter and involved

less lecture time (one or two hours per week), making it easier for her to listen to lectures, learn and retain information. This impairment also affected her ability to perform on exams in these specific courses since the exams were not only timed but were often multiple sentences long.

23. Rashida submitted the various accommodation recommendations and requests to RFUMS's ADA Coordinator one day after she received the results. These accommodation recommendations and requests included but are not limited to "extended time on time-sensitive tasks and/or tests that involve reading," taking "examinations in a separate room," discussion-based learning systems and access to her teachers about matters and assignments "she is unsure about," access audio-books for courses and recorded lectures, speech-to-text software, and, importantly, "guided assistance by staff in order to aid her learning and study skills particular to the Pharmacy School curriculum." Rashida only received exam-related accommodations, which were not approved until the end of the quarter, nearly a month after she had first put in the request. A number of her doctor's recommendations and accommodation requests that were forwarded to the ADA coordinator would be ignored throughout the next quarter.

24. Rashida received exam-related accommodations for Pharmacotherapy II for the first time on February 17, 2016, two days before the quarter ended. Rashida failed Pharmacotherapy II that quarter by 3.23%.

25. After Spring Break, on or about March 17, 2016, Rashida started the quarter on a strong note because of her recent diagnoses that provided her concrete ways and processes that would help her succeed in pharmacy school. Nonetheless, RFUMS initiated dismissal proceedings, which drastically increased her anxiety levels during the entirety of the

quarter and, because of her ADHD, made it very difficult for Rashida to focus on school-related tasks and studies.

26. Rashida would then spend the majority of the quarter fighting a dismissal because of two previous courses she failed without accommodations but never had a chance to even remediate with her newly approved accommodations or after having a chance to meaningfully implement her psychologist's recommendations. In light of her diagnoses, her medication also changed. Although it took some time for her medication to become effective, her medication drastically reduced her symptoms of depression, anxiety, lack of energy, and helped her study more effectively.

27. On or about April 12, 2016, Vice Dean Kevin O. Rynn informed Rashida of his decision to uphold the Student Progression Evaluation and Awards Committee (SPEAC) decision to dismiss her for failing Pharmacotherapy I and Pharmacotherapy II, even though she could have utilized the University's already-existent remediation system to implement the new learning modifications and accommodations that resulted from her recent diagnoses, to pass these two courses. Mr. Rynn's decision made no mention of Rashida's request to take remediations for Pharmacotherapy I and II in light of the new diagnoses and with the recently instituted accommodations.

28. The University's policy does provide that a student who fails the same course twice or fails two or more courses in one year will be considered for dismissal, but suggests that a failed course is only considered failed "after remediation, if offered…."

29. Rashida appealed the decision to Dean Marc Abel on or about April 26, 2016, contending that she should be provided the opportunity to retake or remediate Pharmacotherapy I and II with accommodations in light of her newly diagnosed disabilities which required various accommodations and learning modifications.

30. Still, the Dean upheld the decision of SPEAC on May 6, 2016 to immediately dismiss Rashida. As of May 6, Rashida had been passing each and every one of her courses but had not taken her final exams which she was studying for on a strict study schedule; she was dismissed a little over a week before her final exams. The decision devastated Rashida and she was physically unable to study or function normally, despite the administration asking her to continue to study over the weekend.

31. After Rashida's attorney became involved, the Dean modified his decision on May 9, 2016 to stipulate that Rashida could take her final exams for the Spring quarter, the first of which were administered two days later on May 11, 2016. The Dean strongly warned that a failure in any one of her courses during the Spring quarter would lead them to move forward with the dismissal.

32. In the Dean's modified decision, he stated that Rashida would have an opportunity to take remediations for Pharmacotherapy I and II with accommodations *only* if she passed each and every one of her other courses during that current Spring quarter.

33. Rashida's request to take Pharmacotherapy I and II remediations were reasonable accommodations given the circumstances, and should have been granted irrespective of her performance during the current quarter, so long as it was not an undue burden for RFUMS. The University already planned to administer these same remediations to other students, and it would not have been an undue burden for the University to simply administer these remediations to Rashida, which would have given her a chance to pass two courses that were especially challenging to pass with a specific reading disability and ADHD, in light of the newly instituted learning modifications and approved accommodations.

34. When Dean Abel changed his decision to permitted Rashida to take her final exams, Rashida approached Professor Victoria Barr, who served as both her faculty advisor and taught a Clinical Pharmacokinetics and Pharmacodynamics course Rashida had been enrolled in, in hopes of receiving some guidance for her final exam. Dr. Barr knew of Ms. Issa's disabilities because she served on the University's SPEAC Committee and is believed to have voted against Rashida continuing at the University.

35. During this meeting, Dr. Barr pressured Rashida to give up her accommodation requests and persistence to remain in pharmacy school because she did not believe Rashida could do it. Dr. Barr admitted knowing that Rashida's academic performance was affected by stress, but berated her, insisting that Rashida could not succeed, a mere few days before Rashida's final exam in Dr. Barr's class. Specifically, she scolded Rashida about how school is supposed to be stressful, and that if she could not "handle" the stress of school, the stress of a "pharmacist in the real world" was worse. She stated that Rashida should "let go of things and move on." While Rashida responded that she believed she could succeed, this specific conversation triggered a great deal of anxiety, making her physically unable to study, significantly impacting and delaying her ability to begin studying again, and impacting her ability to take Dr. Barr's exam.

36. A few days later, Rashida performed poorly on Dr. Barr's final exam for Clinical Pharmacokinetics and Pharmacodynamics, and ultimately failed that course in the Spring of 2016. Rashida passed her other courses, including Pharmacotherapy III.

37. Dr. Barr also demonstrated hostility towards Rashida earlier in the quarter when she refused to accept Rashida's doctor's note that she had an important doctor's appointment, thus lowering her recitation and participation grade; refused to meet with Rashida to go over her first exam before her final exam, despite her psychologist's explicit

9

recommendation that she spend more individual time with professors to go over areas of difficulty; refused to let Rashida review her first exam for accuracy (when, in one later exam, Rashida caught several missed points, leading to a change of 6% on that exam); refused to give Rashida partial credit on an exam for which she gave other students without disabilities partial credit because she reasoned in a one-on-one conversation with Rashida that, "In life, people don't receive partial credit"; and refused to give Rashida points on *one* assignment she submitted late (despite Rashida's plea and Professor Barr knowing Rashida had ADHD and was so intimately involved in dismissal proceedings). Professor Barr was hostile and unsupportive towards Rashida during the entirety of the quarter, at times refusing to answer her questions or simply failing to offer her the support and guidance she offered other students. This significantly impacted Rashida's physical ability to study and perform well in this course, causing her to fail this course but pass what she considered much more challenging courses.

38. In May of 2016, Rashida repeatedly renewed her accommodation request to be given an opportunity to take remediations for Pharmacotherapy I and II with the approved accommodations. When in-house counsel directed her to submit her ADA request through the ADA coordinator, the ADA Coordinator refused to process this ADA request, failing to provide her with the standard written form for accommodation requests (as she had been previously provided months before), and pointedly asked her why she had gotten an attorney involved. The ADA Coordinator told her that the same committee deciding whether or not to dismiss her would decide on whether or not she is permitted to take the remediations, and refused to consider her request to take remediations as an accommodation request.

39. On June 1, 2016 SPEAC again voted to dismiss Rashida. Vice Dean Kevin Rynn affirmed this decision on June 7, and advised Rashida of her right to appeal.

40. In further demonstrating its hostility to Rashida's disabilities and accommodation requests, the University immediately deactivated Rashida's campus ID and prohibited her from accessing the University building. It also blocked Rashida access to both her web advisor student account and D2L so that she had no access to her academic record even when preparing her appeal.

41. Students who are dismissed or suspended but are not disabled are never prohibited access to the University before and/or during the pendency of their appeals to the Dean. To the contrary, nondisabled students are permitted to continue their coursework normally pending their appeals, and had access to the University building, student accounts, and D2L during the pendency of their appeals.

42. Still, Rashida appealed this decision on June 16, 2016. Dean Abel affirmed the decision of SPEAC on July 7, 2016.

43. In affirming the decision, Dean Abel stated the University had no obligation to accommodate Rashida in Pharmacotherapy I and II because, when she first took those courses, she did not "disclose a basis for and seek accommodations...." Rashida never suggested the University had an obligation to accommodate her without knowing of her disabilities. Rather, Rashida merely requested the opportunity to take forthcoming remediations with the approved-accommodations and newly instituted learning processes in hand, in light of her more recent diagnoses. This accommodation request was ultimately rejected or ignored in Dean Abel's decision.

44. Upon information and belief, RFUMS has permitted at least three students who did not have the same disabilities as Rashida opportunities to pass courses a third time around,

11

        while it offered Rashida only two chances to pass the pharmacotherapy courses. Another student had three chances to pass her entire first year of pharmacy school before ultimately being dismissed.

45. RFUMS also permitted non-disabled students who did not have the same disabilities as Rashida and who did not request the same accommodations opportunities to continue the program despite failing more than two courses in one academic year. At least two students were permitted the opportunity to repeat more than two courses in their second year of pharmacy school.

46. With accommodations, Rashida is capable of completing the requirements of pharmacy school and being a successful pharmacist, and has repeatedly prospered in face of academic and professional challenges due to her disabilities. With persistence, dedication, and a great deal of effort, Rashida obtained degrees from both high school and college and fulfilled challenging pre-pharmacy requirements. Rashida has worked as a pharmacy technician serving patients and assisting pharmacists for over twelve years. As a pharmacy technician for well over a decade, Rashida must perform the same tasks and utilize the same skill-set as a pharmacist, including but not limited to labeling, counting, pouring, weighing, and mixing prescriptions.

### COUNT I
Americans with Disabilities Act
Discrimination by Failure to Accommodate
42 U.S.C.A. § 12182

47. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1-46.

48. Plaintiff suffers from several impairments that substantially limit one or more of her major life activities.

49. By failing to consider Rashida's remediation requests as accommodation requests; failing to afford her the same opportunities, credits, and support in her courses; failing to provide her the opportunity to remediate the courses she failed; failing to meaningfully consider Rashida's psychological evaluation and recommendations when reviewing Rashida's academic status; dismissing Rashida; and denying her appeal, the University denied Rashida the ability to participate or benefit from the services, facilities, privileges, advantages, or accommodations of the University, and treated her differently than similarly situated students without Rashida's disability.

50. The University also unlawfully discriminated against Rashida by failing to make any reasonable modifications to its own policies, practices or procedures to permit Rashida to take remediations in the summer of 2016.

51. Permitting Rashida to take remediations for Pharmacotherapy I, Pharmacotherapy II, and Clinical PK/PD in the summer of 2016 would not have fundamentally altered the nature of the University's services, privileges, advantages, or accommodations.

52. Offering the remediations would not have been an undue burden on the University, nor would it have been difficult, expensive, or involve an unreasonable commitment of resources.

53. As a result of unlawful discrimination and failure to accommodate, Rashida was denied the same goods, services, facilities, and privileges as those given to similarly situated students without Rashida's disability.

## COUNT II
Americans with Disabilities Act
Retaliation
42 U.S.C.A. § 12203

54. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1-53.

55. As a result of Rashida's disclosure of her disabilities, complaints of discrimination and differential treatment, and requests for accommodations requests, the University and its members, agents, and faculty discriminated against her when it failed to provide her with the same opportunities, credits, and support it provided other students; failed to process her remediation requests as accommodation requests; dismissed her; denied her access to her academic records, electronic systems, and University facilities; and denied her appeal in violation of retaliation laws under the Act, ultimately resulting in her dismissal from the University.

## COUNT III
The Rehabilitation Act of 1973
29 U.S.C.S. § 794

56. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1-55 above.

57. Plaintiff is an otherwise qualified handicapped individual within the meaning of the statute, because her disabilities meet the definition under 34 C.F.R. § 104.3(j).

58. Defendant receives federal funds.

59. Plaintiff was denied services on the basis of her disability.

60. Defendant intentionally failed to make accommodations required under Section 504, in that it was aware of Plaintiff's disabilities but failed to assure accommodation to the educational program to meet her needs, which resulted in Plaintiff's dismissal.

WHEREFORE Plaintiff respectfully requests:

1. Declaratory judgment against the University;

2. Injunctive relief readmitting Rashida to the University to take remediations for the Pharmacotherapy I, Pharmacotherapy II, and Clinical PK/PD

3. Compensatory damages;

4. Emotional Distress damages;

5. Punitive damages;

6. Prejudgment interest;

7. Punitive damages;

8. Attorney's fees and costs; and

9. Such other relief as law and justice allow.

JURY DEMAND

Plaintiff requests trial by jury.

Dated: June 16, 2017

Respectfully Submitted,

s/ Yusra Gomaa
Attorney #: 6299883

Kapitan Law Office
ygomaa@kapitanlaw.net
P.O. Box 6779
Chicago, IL 60680
312.566.9590

15